UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANGELA S. SANDUSKY,<br><br>                Plaintiff,<br><br>        v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>                Defendant. | Case No. 2:23-cv-00003-EJY<br><br>**ORDER** |

      Angela S. Sandusky ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance ("DIB") under Title II of the Social Security Act (the "Act"). ECF No. 12.  On June 30, 2023, the Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's Motion for Reversal and Remand. ECF Nos. 16, 17.  For the reasons stated below, the Commissioner's decision is affirmed.

## I.     BACKGROUND

      Plaintiff filed an application for disability insurance benefits on April 21, 2020 alleging disability beginning on January 1, 2015. Administrative Record ("AR") 578-583. The Social Security Administration denied Plaintiff's claim initially and upon reconsideration (AR 457-467, 468-481), followed by Plaintiff's request for a hearing before an Administrative Law Judge ("ALJ"). AR 497-499. The ALJ held a hearing on December 7, 2021. AR 403-415. On January 28, 2022, the ALJ issued a decision finding Plaintiff not disabled. AR 23-46. Plaintiff requested review of the ALJ's decision (AR 575-577) that was denied by the Appeals Council on November 18, 2022. AR 1-7. Plaintiff now seeks judicial review of the Commissioner's decision under 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

      The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42

1

U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla." It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Biestek v. Berryhill*, -- U.S. --, 139 S.Ct. 1148, 1154 (2019)). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). However, a reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). And, a court may not reverse an ALJ's decision based on a harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### III.   DISCUSSION

**A.   <u>Establishing Disability Under the Act</u>.**

To establish whether a claimant is disabled under the Social Security Act, there must be substantial evidence that:

> 1. the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> 2. the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-

disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (internal citation omitted); 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps consider:

Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *See id*.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 21, 2020, the application date. AR 26. At step two, the ALJ found Plaintiff had severe impairments of bipolar disorder, anxiety disorder, attention-deficit hyperactivity disorder, chronic sinusitis/allergies, and migraine headaches. *Id.* At step three, the ALJ found none of Plaintiff's

severe impairments, considered singly or in combination, met or medically equaled the criteria of any impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.*

In preparation for step four, the ALJ determined "[a]fter careful consideration of the entire record, … [Plaintiff] has the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 416.967(b) with exceptions. The … [Plaintiff] can have no exposure to temperature extremes, vibrations, or be exposed to dusts, fumes, gases, smoke and poor ventilation. The … [Plaintiff] should not be exposed to hazards, such as heights or dangerous machinery. The … [Plaintiff] can work in an environment with a moderate noise level, such as found in an office or retail setting. Despite mental impairment, the … [Plaintiff] is able to understand, carry out and remember simple work instructions, use judgment to make simple work-related decisions, accept supervision and interact with coworkers frequently, and adapt to occasional change in a routine work setting, to perform simple work tasks with no deadlines or numeric production quotas; however, interaction with members of the general public would be occasional and in brief and casual encounters." AR 32.

At step four, the ALJ found Plaintiff had no past relevant work. AR 45. At step five, the ALJ determined, after considering the testimony of the Vocational Expert ("VE") and Plaintiff's age, education, work experience, and RFC, that Plaintiff would be able to perform the requirements of other representative occupations. AR 45-46. Because the ALJ concluded Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy, the ALJ determined Plaintiff has not been under a disability, as defined by the Act, since April 21, 2020 through the date of the ALJ's decision. AR 46.

**B.** **Plaintiff Claims the ALJ Failed to Properly Consider Plaintiff's Symptom Testimony.**

Plaintiff first discusses the medical records documenting her alleged disability due to struggles with mental health, anxiety, depression, and bipolar disorder. ECF No. 12 at 5 *citing* AR 613. Plaintiff recaps her prior assertions that she has difficulty sleeping when she must leave her house the next day, becomes agitated with others, struggles to maintain focus, and maintains a strict routine of taking care of her dog, taking her medication, and attempting to sleep. *Id. citing* AR 631-632. Plaintiff says she showers every few days. *Id. citing* AR 632. Plaintiff contends she does not

go out to shop for dog food, work on computers, cut hair, lift objects, or socialize around others due to her mental illness. *Id.* at 5-6 *citing id.*  Plaintiff says she relies on her mother to cook meals for her and to remind her to maintain clean personal hygiene. *Id.* at 6 *citing* AR 632-633.  Plaintiff discusses how her inability to get along with others has led to her being fired from several previous jobs. *Id. citing* AR 637.  At the hearing before the ALJ Plaintiff stated that she experiences constant pain in her hand, neck, head, and shoulders, memory loss on account of her medication, and depression due to her lethargy and isolation from others. *Id. citing* AR 408-410.

Plaintiff argues the ALJ erred in his conclusion that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical evidence in the record.  *Id.* at 7 *citing* AR 33.  Plaintiff asserts that despite providing a detailed summary of her multiple visits with numerous mental health professionals—Drs. Maria Manalo, Raafat Khani, Sylvia Naseath, David Foggia, and Michael Mathisen—and analyses of their respective medical opinions, the ALJ failed to state specific clear and convincing reasons for rejecting Plaintiff's testimony. *Id.* at 7-8 *citing* AR 33-44.  Plaintiff says the ALJ relied solely on a lack of supporting objective evidence as his basis to reject Plaintiff's testimony, which is not permitted under 20 C.F.R. § 416.929(c).  *Id.* at 8.  Plaintiff questions how the ALJ arrived at his decision when he did not identify any inconsistencies between Plaintiff's conduct and testimony and did not raise any issues with Plaintiff's activities of daily living or her reputation for truthfulness.  *Id.* at 9.

Because Plaintiff contends the ALJ had no legal basis to support his rejection of Plaintiff's testimony concerning the persistence, intensity, and limiting effects of her symptoms, Plaintiff asks the Court to reverse the decision of the Commissioner and award benefits, or, in the alternative, remand for correction of the ALJ's legal error.  *Id.* at 9-10.

C. **The Commissioner Argues the ALJ Reasonably Discounted Plaintiff's Subjective Symptom Statements**.

The Commissioner submits the ALJ was correct in discounting Plaintiff's complaints about the severity of her symptoms because of the inconsistencies between Plaintiff's testimony and record evidence, her improvements through treatment, documented activities, and other non-medical contributing factors to Plaintiff's condition.  ECF No. 16 at 5 *citing* AR 32-41.

The Commissioner argues Plaintiff's claim that her memory loss affected multiple areas of her life, including her ability to work, is belied by evidence that Plaintiff's memory was normal and intact. *Id. citing* AR 35-36, 40.  The Commissioner asserts that while Plaintiff complained of anxiety, depression, bipolar disorder, attention deficit disorder, and hyperactivity disorder interfering with her ability to work, the ALJ found, based on the record, that Plaintiff had "generally mild" mental examination results, maintained her language skills, showed no issues with limited attention span, demonstrated normal cognitive ability, was able to do standard arithmetic, and showed normal memory and judgment. *Id.* at 6 *citing* AR 35, 39-40.  The Commissioner rejects Plaintiff's contention that the ALJ "merely summarized" the evidence arguing that the ALJ laid out in discernible fashion specific medical evidence in the record inconsistent with Plaintiff's subjective statements. *Id. citing* AR 33-41.

The Commissioner also notes Plaintiff's testimony is contradicted by evidence in the record demonstrating Plaintiff's condition improving through treatment. *Id.* at 7.  For example, Plaintiff testified that she was not stable on medication, but the Commissioner points to numerous instances in the record where either Plaintiff or her treating physicians noted Plaintiff was stable and/or suffering no side effects from her medication. *Id.* at 7-8 *citing* AR 728, 1201, 1702, 1714, 2119.  Further, Plaintiff stated she suffered from sinusitis and allergies, but the Commissioner notes the ALJ found these conditions were mostly managed by treatment and medication. *Id.* at 8 *citing* AR 41.  The Commissioner questions the validity of Plaintiff's complaints concerning migraines when the ALJ found there was no evidence in the record of any medication prescribed to treat the alleged headaches. *Id. citing* AR 40-41.

The Commissioner argues the ALJ's focus on Plaintiff's ability to vacation with her romantic partner and to be in a relationship with another person as inconsistent with her subjective complaints of the severity of her symptoms and inability to socialize with other people. *Id.* at 8-9 *citing* AR 32-33, 37.  Finally, the Commissioner contends the ALJ correctly found Plaintiff's medical issues were caused by factors other than her impairments—in Plaintiff's case financial difficulties—thus weighing against a finding that Plaintiff's testimony was credible. *Id.* at 9 *citing* AR 36.

D.     **Summary of the ALJ's Decision**.

After crafting Plaintiff's RFC, the ALJ discussed the two-step process required of an ALJ to analyze a plaintiff's symptoms and their intensity. AR 32. The ALJ then recapped Plaintiff's testimony concerning the alleged symptoms of her impairments:

> The … [Plaintiff] testified that she was unable to work because of her memory loss, and that she was not able to remember "a lot of things." She said that she could not sit or stand for a very long time because she had a lot of anxiety and she would become very anxious. She said that she also suffered from depression and this kept her from doing anything on a daily basis. She said that she had headaches quite a bit, and she experienced fatigue. She said that she could not deal with people, and her anxiety and depression had increased. She said that her bipolar disorder and ADHD interfered with her ability to think straight. She said that she would try to go to work, she might become anxious when driving, and she said that she could not take the bus. She said that she could not walk for a very long time, and she was only able to take her dog out and bring her back home. The … [Plaintiff] said that she could not stand for long periods because her feet would hurt. The … [Plaintiff] complained of pain and arthralgias of her hands, neck and her shoulder. She said that she never felt well. She said that she suffered from chronic rhinitis and sinusitis, and that she had headaches.
>
> The … [Plaintiff] said that she took medications, and she had side effects, including trouble sleeping. She said that she took Klonopin, Lexapro, gabapentin and trazodone, which made her feel tiredness or that she might sleep too much. She said that she never slept well and she said that her medication did not stabilize her. The … [Plaintiff] said that she sometimes forgot to take her medications. She said that sometimes she might forget her appointments. She said that she felt that her memory had worsened.
>
> The … [Plaintiff] said that her anxiety would increase if she had to go to appointments, or if she had been told to do something in a demanding manner, she would become very anxious. She said that she was anxious being in crowds or in noisy places, and sometimes she did not know what might trigger her anxiety. She said that she isolated in her room by herself and she did not want to get out of bed. She said that she put off doing her household chores and she was not able to lift more than 10 pounds.

AR 32-33.

The ALJ concluded that while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's statements concerning their intensity, persistence, and limiting effects were not entirely consistent with the evidence in the record, medical and otherwise. AR 33. The ALJ then, in great detail, discussed Plaintiff's medical history from March 2016 to October 2021. AR 33-41.

On March 10, 2016, Plaintiff presented to Dr. Manalo complaining of a depressed mood, crying spells, and hearing voices. AR 33 *citing* AR 1181. Upon examination, however, Dr. Manalo

observed Plaintiff was alert, oriented, and not in distress. *Id. citing* AR 1182.  Dr. Manalo assessed a severe episode of recurrent major depressive disorder with psychotic features and noted Plaintiff denied having negative effects from her current medication regimen. *Id. citing* AR 1183.  On May 23, 2017, Dr. Manalo assessed Plaintiff to have an anxiety disorder and on August 30, 2017, she added that Plaintiff experienced psychosis and bipolar disorder.  AR 34 *citing* AR 1151, 1155-1156. However, the ALJ noted that Dr. Manalo's conclusions were not supported by examination findings. *Id.*

On October 1, 2018, Plaintiff visited Dr. Khani who observed Plaintiff was pleasant, cooperative, and in no distress. *Id. citing* AR 1136.  Dr. Khani assessed Plaintiff as suffering from anxiety disorder, bipolar disease, and chronic and major depression. *Id. citing id.*  On October 24, 2019, Plaintiff consulted with Dr. Naseath who diagnosed Plaintiff with bipolar disorder and described her depression as manifesting itself through depressed mood, low energy, changes in sleep pattern, loss of interest or pleasure, change in weight or appetite, and feelings of worthlessness or excessive guilt. *Id. citing* AR 728.

On October 30, 2019, Plaintiff visited Dr. Mathisen. *Id.*  During Dr. Mathisen's examination of Plaintiff, he found she presented as angry, anxious, unhappy, and irritable but appeared attentive and was communicative.  AR 35 *citing* AR 1220.  Dr. Mathisen also found Plaintiff to be manic, excited and irritable, over-talkative with pressured speech, and possessing poor judgment but with intact cognitive function. *Id. citing* AR 1222.  Dr. Mathisen assessed Plaintiff to suffer from bipolar disorder and anxiety disorder. *Id. citing* AR 1223.  Dr. Mathisen prescribed Plaintiff on a measured dosage of Depakote and continued her on several other medications. *Id. citing* AR1224.  Throughout Plaintiff's interactions with Dr. Mathisen, he consistently tinkered with her medication regimen in response to her reports of their impact and his observations of her progress or lack thereof.  AR 34-36.  On December 30, 2019, Plaintiff reported to Dr. Mathisen that her behavior was stable with no issues with psychosis, depression, or anxiety.  AR 35 *citing* AR 1216.  Dr. Mathisen noted no signs of depression and only moderate signs of elevation in Plaintiff's mood, normal speech, and no signs of psychosis, bizarre behavior, or hallucinations. *Id. citing id.*  Dr. Mathisen also observed Plaintiff's orientation, memory, cognitive abilities, insight, and judgment were intact and normal. *Id. citing id.*

On May 4, 2020, at a follow up with Dr. Mathisen, Plaintiff reported a moderate increase in anxiety and mood instability. *Id. citing* AR 1205. Following a slight alteration to Plaintiff's prescriptions, Plaintiff reported on June 1, 2020 that her anxiety and depression were well-controlled and that other than some irritability her behavior had been stable and without any psychiatric issues. *Id. citing* AR 1201. At an August 3, 2020 visit with Dr. Mathisen, Plaintiff complained of increasing difficulty with the ability to focus on completing tasks citing the COVID-19 pandemic and her financial situation as causes. AR 36 *citing* AR 1718.

On December 1, 2020, at a visit with Dr. Naseath, the doctor observed Plaintiff to be agitated, to have pressured speech, and to be in a depressed and anxious mood. *Id. citing* AR 1729. Dr. Naseath concluded that Plaintiff's thought process was tangential but that she had no memory impairment. *Id. citing id.* Dr. Naseath found Plaintiff to suffer from major depressive disorder, recurrent and moderate anxiety disorder, bipolar disorder, and attention-deficit hyperactivity disorder. *Id. citing* AR 1730. On December 15, 2020, Dr. Mathisen documented Plaintiff's reports that her behavior had been uneventful and that she had suffered no side effects from her medications. *Id. citing* AR 1714. On January 28, 2021, Plaintiff again reported to Dr. Mathisen that she had been struggling to sleep and experiencing anxiety due to her financial situation. *Id. citing* AR 1710. Plaintiff's status was mostly unchanged following March, April, May, and June 2021 visits to Dr. Mathisen. *Id. citing* AR 1702, 1706, 1780, 2119. At a June 3, 2021 therapy session with Licensed Clinical Social Worker ("LCSW") Gordon Cvach, Plaintiff discussed romantic relationships including her plans to go on a vacation with her current significant other. AR 37 *citing* AR 1803. As a transition diagnosis LCSW Cvach found Plaintiff suffered from major depressive disorder, recurrent and moderate anxiety disorder, and bipolar disorder. *Id. citing* AR 1802.

With respect to Plaintiff's struggle with sinusitis/allergies, the ALJ provided detail regarding Plaintiff's treatment records from February 2014 until August 2021. AR 37-39. At Plaintiff's initial visit with Dr. Foggia, the doctor reviewed a recent CT scan of Plaintiff's sinuses that showed a benign appearing left inferior maxillary retention cyst and minimal membrane thickening in the ethmoid sinuses. AR 37 *citing* AR 713. Dr. Foggia did not note any other irregularities during this session. *Id.* At a June 15, 2015 consultation, Dr. Foggia assessed Plaintiff's sinus pain and

headaches were possibly caused by a migraine exacerbated by allergic rhinitis but recommended no surgical intervention. *Id.* citing AR 712.

On October 2, 2017, Dr. Jesus Hernandez examined Plaintiff for headaches and found she was able to give a cogent medical history, interact and follow commands appropriately, and had fluid speech. AR 37-38 *citing* AR 715. Dr. Hernandez further noted Plaintiff's motor skills, sensory skills, and neurologic examination were mostly normal. AR 38 *citing* AR 716. On January 15, 2020, after complaining of sinus congestion, headaches, coughing, and a history of asthma, an x-ray revealed no abnormalities in Plaintiff's heart or lungs. *Id. citing* AR 761, 1001. On July 3, 2020, after a March 10 initial observation, Dr. Randall Lomax performed a functional endoscopic sinus surgery to address any risk of infection Plaintiff might have due to her sinus issues. *Id. citing* AR 1243-1245. Almost two weeks after the surgery, Dr. Lomax reported Plaintiff was doing better. *Id. citing* AR 1519. On August 30, 2021, after Plaintiff complained of chronic rhinitis, Dr. Sins Nasri examined Plaintiff and found she suffered from nasal congestion, postnasal drip, chronic rhinitis, and hypertrophy of the nasal turbinates, but no chronic sinusitis. AR 39 *citing* AR 2098, 2102-2103.

Afte recapping Plaintiff's impairment of sinusitis/allergies, the ALJ concluded the impairment was manageable by therapy and medications and Plaintiff's symptoms support reducing her exertional work to light work. AR 41. The ALJ proceeded to classify each of the medical opinions in the record as either persuasive or unpersuasive (AR 41-44) prior to making his final determination concerning disability.

E.   **Analysis**

Congress expressly prohibited granting disability benefits based on a plaintiff's subjective complaints. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); *see also* 20 C.F.R. § 404.1529(a) (an ALJ will consider all of a plaintiff's statements about symptoms including pain, but statements about pain or other symptoms "will not alone establish" a plaintiff's disability). An "ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to [the Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

When a plaintiff provides objective medical evidence of an underlying impairment that could reasonably produce his alleged subjective symptoms, an ALJ will evaluate the intensity and persistence of those symptoms to determine how they limit the plaintiff's ability to work. 20 C.F.R. § 404.1529(c)(1). Through that evaluation the ALJ will determine whether and the extent to which the plaintiff's statements are consistent with (1) the objective medical evidence and (2) the other evidence in the record. 20 C.F.R. § 404.1529(c)(2)-(3); Social Security Ruling 16-3p, 2016 WL 1119029. The ALJ may conclude a plaintiff's subjective symptoms limit his capacity to work only if those alleged symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). "[I]t is the ALJ's prerogative" to analyze whether and to what extent a plaintiff's symptom statements are consistent with the record as a whole and, for this reason, the role of "a reviewing court is limited." *Molina v. Astrue*, 674 F.3d 1104, 1120-21 (9th Cir. 2012). If an ALJ "show[s] his work" and his rationale for discounting a plaintiff's symptoms reports are "clear enough that it has the power to convince," the ALJ's decision should be affirmed even if the reviewing court would have decided the issue differently. *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022); *see also Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (an ALJ does not need to "perform a line-by-line exegesis of [a] … [plaintiff's] testimony," or "draft dissertations when denying benefits"); *Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

However, an ALJ cannot reject a plaintiff's subjective complaints based solely on objective medical evidence. 20 C.F.R. § 404.1529(c)(2); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the … [plaintiff's] pain and its disabling effects."); *Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the … [plaintiff's] subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. We have upheld ALJ decisions that do just that in many cases.").

An ALJ must engage in a two-step analysis when considering whether a plaintiff's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is

objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The … [plaintiff] is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citations and internal quote marks omitted). Second, "[i]f the [plaintiff] meets the first test and there is no evidence of malingering, the ALJ can only reject the [plaintiff's] testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citation and quotation marks omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." *Id. quoting Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the plaintiff's] testimony.").

In this case, at step one, the ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. AR 33. Therefore, the question for the Court is whether, at step two, the ALJ supplied specific clear and convincing reasons for rejecting Plaintiff's testimony concerning the severity and intensity of her symptoms.

In his analysis, the ALJ addressed each of Plaintiff's subjective complaints and identified evidence in the record that contradicted her claims. The ALJ noted numerous instances in the medical record demonstrating Plaintiff had normal memory function, cognitive abilities, and the ability to socialize and maintain conversation with others including romantic relationships. AR 33-37. The ALJ also noted Plaintiff's statements to LCSW Cvach that she had plans to go on a vacation with her significant other. AR 37. The ALJ acknowledged Plaintiff's struggles with anxiety, depression, and bipolar disorders—along with the effects of those disorders on Plaintiff's life—but documented Plaintiff's progression from March 2016 to June 2021 in which Plaintiff showed improvement in her symptoms. AR 33-37. The ALJ discussed Plaintiff's consultations with numerous physicians, particularly Dr. Mathisen, each of whom noted Plaintiff's disorders but

recommended treatment regimens to which Plaintiff responded relatively well. AR 34-36. Positive response to medical treatment undermines a claim of disability. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017), *citing* 20 C.F.R. §§ 404.1520a(c)(1). The ALJ also noted that Plaintiff told Dr. Mathisen on two occasions that her anxiety was due to stress related to the COVID-19 pandemic and her financial situation. AR 36. A non-medical cause of a plaintiff's impairment can be an additional negative consideration for an ALJ when analyzing a claim for benefits. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (finding a plaintiff's request for disability benefits based on a stressful home living situation was a clear and convincing reason for the ALJ to reject the claim).

Regarding Plaintiff's physical impairments, the ALJ concluded Plaintiff did in fact suffer from chronic rhinitis and sinusitis but, after reviewing relevant evidence in the record, determined the conditions could be managed through treatment. AR 41. The ALJ supported his conclusion by reiterating the findings of various physicians that Plaintiff's struggles with chronic rhinitis and sinusitis did not require emergency room or hospital attention for management of her pain. *Id.* The ALJ did, however, take Plaintiff's struggles with these conditions into account when formulating Plaintiff's RFC stating that she should not be exposed to extreme temperatures or pulmonary irritants and reduced her exertional work to light work. AR 32, 41. In regard to Plaintiff's complaints of headaches, the ALJ noted multiple instances of observing Plaintiff to have normal neurological test results. AR 38, 40. Plaintiff also complained of not being able to lift more than ten pounds, but this assertion was directly refuted by the opinion of Dr. Jon Arnow who found Plaintiff could in fact carry up to ten pounds frequently. AR 44 *citing* AR 460.

In sum, the ALJ addressed each of Plaintiff's subjective complaints and the perceived severity of her symptoms in his evaluation. The Court finds the ALJ provided ample specific, clear and convincing reasons for discounting the alleged intensity of Plaintiff's symptoms. The ALJ's determination that Plaintiff is able to perform work within the RFC tailored for her was also well supported under the Ninth Circuit's legal standard. The Court reminds Plaintiff that a person does not have to be symptom free to be able to work. *Leon v. Kijakazi*, Case No. 22-cv-00456-VCF, 2023 WL 3412782, at *6 (D. Nev. May 11, 2023) *citing Fair*, 885 F.2d at 603. Plaintiff is not entitled to

remand because she is displeased with the ALJ's conclusions. *See Jackson v. Saul*, Case No. EDCV 19-01576-JEM, 2020 WL 2768682, at *5 (C.D. Cal. May 27, 2020).

The Court's role is not to second guess the ALJ's determination even if there is more than one interpretation of the evidence that could have been made. *Todd v. Saul*, 822 Fed.Appx. 613, 615-616 (9th Cir. 2020). As the Ninth Circuit instructs, "to be clearly erroneous, a decision must ... strike us as wrong with the force of a five-week old, unrefrigerated dead fish." *Ocean Garden, Inc. v. Marktrade Company, Inc.*, 953 F.2d 500, 502 (9th Cir. 1991). This standard does not yield the result Plaintiff seeks.

## IV. ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and Remand (ECF No. 12) is DENIED.

IT IS FURTHER ORDERED that Defendant's Cross-Motion to Affirm (ECF No. 16) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of Court must enter judgment in favor of Defendant and close this case.

DATED this 15th day of August, 2023.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE